Very good. In my honors, I'm Geoffrey Barrett. I'm representing George Decker in this feature of Eternity's Case. The agreement in this case was to get a doctor. It wasn't just because there was new evidence that was ambiguous. It was to get a doctor to evaluate that evidence. One is that the evidence from the new evidence here was that there was an abuse of force. Another company by a particular industrial doctor said what the reports are. So why is it that the government has an obligation to go back and evaluate large numbers of passengers themselves? Well, during the district court, an abuse was required to get a doctor to evaluate those reports. Well, the district court rejected it. Well, it's also clear that remand was required. It was required to have some public space for the defense's position. This was not justified. Well, as you can see, the local court did decide, well, I don't care as much numbers. It was not supported by the doctor's position. It explains why these numbers should change. So there's a little more discretion. That was not a district court outcome. Because the numbers were very high, the NML was not straight. It was a black-stripe. A black-stripe. It was a black-stripe. It was a black-stripe. It was a black-stripe. And sometimes you get numbers that are way off. You have to subpoena it. You have to hold the rest of it. But you can't interpret those numbers. The doctor must interpret them. Well, but we have a signal. The doctor's opinion. So why is it the court should say, well, this is an unlawful motive? Well, the government can't possibly justify this. If you want to get an order, you have to say, well, I don't care. Why is it that the district court should do this? Because nothing was required as well. Well, as I report, the district court, I think that that's a good question. I think that's what you're saying. Once the court is decided, it's also clear that it doesn't help you to meet the court court. So, if you're here now, you're happy. There's no debate. And in a couple of weeks, you can go to the Fairwater decision. That doesn't mean it's absolutely crystal clear that it is. So, what was it that ordered the court to move the NML to subpoena? I'm not a physician myself. I'm not a doctor myself. He spoke to the numbers. I'm a 60-year-old university surgeon. I've got a personal statement to tell. That's why I put it on my order. I don't get the number. I don't know what it is. But the fact of the matter is that it was reasonable for the government to do that where a doctor was required. So, without being a professional interpretation of the numbers, we have no idea what the significance of some of those are in terms of how you get to see it. So, without looking at the documentation, the documentation that we just heard, the guardrails that we just heard, we have no idea what the significance of that is. It's clear in terms of the implications and the age of the physician. It's clear that actually it's very difficult. These numbers, they're not normal. So, we don't know what the significance is. We don't know what the implications are. So, it's very difficult for me to identify the numbers. We don't know what the significance is. So, we're not getting the numbers that we need to find. Well, the age of the patient is very different. It's very different. And so, it's very difficult. It would have been better to have a doctor or a medical technician explain the numbers on our side. They would have been able to do that. They would have been able to carry on the war. They would have been able to carry on the war. That would have been much more common for a medical technician. I'm not sure what the significance of it is. The problem with the transposers, especially those numbers, we don't have the information on the war. It's actually far from the numbers. So, what do we do with that? Well, it would be unreasonable to do that. You need a doctor to run it. That's what it's for. I'm not saying that we need a medical technician. We can't tell them how to do it. We can't say, well, we need a medical technician. We're going to make sure. But for most of the patients, no. Except for the aging households. We're going to ask you guys to grab the numbers and send it on to one of the medical technicians. That would be the underlying issue. I'm not going to discuss these litigations. This is more of a technical issue. I'm not going to go into that specifically. I'm going to go into this more specifically. Well, there is a gap between substantial justification and substantial evidence. That's just the first point. Well, there is substantial evidence. It's a strong indicator of why there's substantial justification. Here, I would like to use some medical experts to explain some of the creative numbers. So, it best be simple. Say, no doctor is a nurse. So, I'm not going to go into that. I'm not going to go into that. But suppose someone's condition is a 1.6. How should this be assessed? So, send me the numbers. Say, there's a number that you have to read in a computer. Say, it's a 1.6. It's an upper-income child. It's always been a 1.6 or lower. It's always been a 1.6 or lower. Well, that's what you found. The numbers are used to show that you can find the original results. But, as an assessment for that decision, the general question is justified in our view. That's not the right solution. I'm sorry. It's a decision that says, numbers must be explained by the physician or someone with their right to know. But the numbers don't just speak for themselves. Actually, it is a matter of fact. It requires personal interpretation. And the freelance R-site might be an area of context up for it to give that explanation. It wasn't carried around for years, or a teaming was done. They were just looking at their analysis. I'm sorry. This is a case of statistical review. Do you have any statistics that are clear on how well it demonstrates that the AMJs now are the ones in the significant cases where the AMJs exist? It's not clear. It's just a far greater area of gravity, of course. I realize you're saying we're not on the same topic. It's true. That is also associated with the clinical findings that we have been soliciting in the medical scene. Dr. Graves published another study, and Dr. Workman and her researchers have taken those factors and come back to their strong positive and positive expectations. That's why the IRF is a very small group. But that expected effort now required further assessment of the statistics. It must be read as a whole. Here's the one proposition in the paper recorded for Dr. Gerardi. The development of the statistical review was essentially just flat in practice because the data that Dr. Gerardi has gained, it is all well and good for the development of a significant number of studies. That is such a good thing. What could also happen, the interest groups might have to be re-trained in a number of different areas of study or to be contacted by Dr. Workman. Remember, you said there's 12 states in the agency. This was a study that was re-considered by Dr. Gerardi. There are some different structures. I think Dr. Gerardi, as you said, is a very good example of that. Accordingly, the court just enables a man, McPherson, who is the affirmative district court's order because his lawsuit does not abuse his discretion. That is, he does not apply to him for a new standard and his decision does not belong to him for any reason other than this. Now, eventually, new evidence can be supported after the individual issues the decision. That's correct. That's correct. That's correct. That's correct. That's correct. Because the district court does not abuse its discretion it does not need a petitioner's decision to substantiate a case at all. What's the other issue? What does it require that we do that? I'm just curious as to what's going on in this matter. I'm not sure how that gets resolved. I was returning back to the bus trials and returning back to the lawsuit case at that time. Nevertheless, as you said, that's not required. It doesn't say anything about whether the district court abuses its discretion or not. The district court, the district court out of the new evidence being abused required a reading, but this is not the case in which no doctor has offered any opinions about this, about the presumption of a petition. This is a case in which there are fewer than seven medical opinions support the use cases of this comprehensive trial system. Moreover, the district court does not specifically find that there is lack of substantial evidence in this case. It just found that it couldn't decide whether substantial evidence is important and whether it needs to substantiate the case. Well, how many blood tests have been required in this work since you were assessed by the state of Colorado in the early 2000s? Anything? Well, I used to sit at the top of my desk and I'd look at blood work and I'd be able to discuss blood work with other doctors. But, it's strange that I choose recommendations that don't have any variance. Notice that, and quote, there is evidence in the record that will support the agency's decision and so the magistrate judge which is the district court will throw disruptive writing pieces of evidence that will support the agency's decision. So when the district court goes so far as to say, yes, agreement is required, but we concede evidence does support the agency's decision and does not find an absence of substantial evidence, this is a case in which the judge's position was substantially disrupted and Judge Osmond did not use his assertion to find evidence. I'd also like to break one other point which is that this court is not reviewing the appeals counsel's decision to deny review. In the Meyer case, Meyer being Holden,  to explain that the commissioner's case was substantially disrupted by the two points, the underlying agency action and the misuse of decisive requirement. This court explained that the underlying agency action is the ALJ's decision, not any other decision along the way, not any other non-final agency decision. It's only the ALJ's decision that this court reviews for substantial justification or for abuse of discretion, abuse of court's discretion, in finding a substantial justification. So, the fact that the ALJ's decision is a version not to have granted the request for review is not an issue here. It's the fact that the ALJ's decision on the facts beforehand was substantially justified. And indeed, since this court did not finalize the substitution, that didn't support the ALJ's decision, really the question is whether the ALJ's decision was substantially justified. And, given the district court's findings that there was not a substantial point in the ALJ's decision, not to mention the fact that these treaties including the non-exempting sources follow a reasonable basis in favor of the ALJ's decision. The ALJ's lawsuit did not use the discretion in finding substantial justification before the court answered our questions. Thank you. Thank you very much. Thank you. Thank you. That was the fact that evaluating substantial justification only to the error of giving the ALJ's agreement was to be considered. So, the error here would be an error to send back for a doctor or a neighbor, a medical analyst, updated documents. And, what does that matter? What is the difference? The error in my study is the documents. That's, that's a beautiful story. The, the plus factor is the probability that there wasn't any support for them. If there were problems with the ALJ's decisions with the interim effect, or if you were doing a good conversation, let's just talk from you here, we do have medical evidences that provide substantial evidence in support of the decision. We have additional evidence from the common law that the ALJ is not going to survive. Your science, your theory, what does that matter? One more quick lesson. Unreasonable for the government to argue that it did not require agreement. I've studied the short order agreement and all those numbers all the time. And, you know, it's just possible that we can't get to the story that we need to get to the story. It never stands alone, but it's a natural question. It's a, it's a, a natural question. One of the numbers is still there. So, it's still on the stages of solution. And that's, it's important that we do, that we do something about it. Thank you. I'm sorry. That's all for this year. I apologize if you are still hearing this.
judges: Clifton, Murguia, Nguyen